UNITED STATES of AMERICA
U.S. DISTRICT COURT -- EASTERN DISTRICT OF MICHIGAN

SUNJAY STERLING,

     Plaintiff,                           DEMAND FOR JURY TRIAL

 -vs-                                 Case No.
                                    Hon.

PREMIERE CREDIT OF NORTH AMERICA, LLC,

     Defendant.

## COMPLAINT & JURY DEMAND

### Introduction

1. The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

2. The FDCPA was passed to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses. 15 U.S.C. 1692.

3. Under the FDCPA, a "consumer" is a natural person obligated or allegedly obligated to pay any debt. 15 U.S.C. 1692a(3).

4. Under the FDCPA, "debt" means any obligated or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which

are the subject of the transaction are primarily for personal, family, or household purposes. 15 U.S.C. 1692a(5).

5.      Under the FDCPA, a "debt collector" is any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another.  15 U.S.C. 1692a(6).

6.      A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. 15 U.S.C. 1692e.

7.      Collection abuse takes many forms, including disclosing a consumer's personal affairs to friends, neighbors, or an employer, or obtaining information about a consumer through false pretense.  See *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 398 (6th Cir.1998).

8.      Any debt collector who fails to comply with the provisions of the FDCPA is liable for any actual damages sustained, statutory damages up to $1,000.00, actual damages, and attorney's fees as determined by the Court and costs of this action. 15 U.S.C. 1692k.

## Jurisdiction

9.      This court has federal question jurisdiction under the Fair Debt Collection Practices Act, 15 U.S.C. §1692k(d) and 28 U.S.C. §§1331, 1337.

10.      This court may exercise supplemental jurisdiction over the related state law claims arising out of the same nucleus of operative facts which give rise to the Federal law claims.

## Parties

11.      The Plaintiff  to this lawsuit resides in South Lyon, Michigan in Oakland County.

12.      Premiere Credit of North America, LLC, ("PCONALLC") is a corporation doing business

2

in Michigan.

13.    Plaintiff is a consumer as defined by the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq ("FDCPA") at 1692a(2).

14.    PCONALLC is a "debt collector" under the FDCPA, 15 U.S.C. §1692k(6).

15.    PCONALLC is a "collection agency" according to the definitions in M.C.L. 339.901(b).

## Venue

16.    The transactions and occurrences which give rise to this action occurred in Oakland County.

17.    Venue is proper in the Eastern District of Michigan.

## General Allegations

18.    Prior to June 20, 2016, PCONALLC was hired by a third-party to attempt to collect an alleged debt from the Plaintiff.

19.    On or about June 20, 2016, Plaintiff received a phone call from PCONALLC on his cell phone; Defendant did not leave a voice message.

20.    Plaintiff, at no time, gave PCONALLC permission to contact any third parties regarding this or any debt.

21.    On June 20, 2016 at 5:14 p.m., a "Jessica" from PCONALLC called Plaintiffs's place of employment, identified herself as being from "Premiere Credit," asked for Plaintiff by name, left a phone number – 1-844-330-5066 – with an employee at Plaintiff's place of employment, and when the employee transferred Jessica to Plaintiff's voice mail, Jessica did not leave a message for Plaintiff.

22.    At all times relevant, PCONALLC had actual knowledge that the Plaintiff worked for the subject employer and had no reason to contact the Plaintiff at his place of employment other

than to harass the Plaintiff in an attempt to collect a debt.

23.   On or about June 21, 2016, PCONALLC sent Plaintiff a letter to his home address, demonstrating that Defendant had actual knowledge of the Plaintiff's location and did not need to contact any third-party to locate Plaintiff.

24.   On or about June 21, 2016, Plaintiff received a phone call from PCONALLC on his cell phone; Defendant did not leave a voice message.

25.   On or about June 23, 2016 at 9:50 am, an "Amy" from PCONALLC called asking for the Plaintiff by name at his place of employment, stating that she was calling from "Premier Credit"; the employee who took the call transferred the call to Plaintiff's voicemail, but Amy did not leave a message for Plaintiff.

26.   On or about June 23, 2016 at 4:45 p.m., PCONALLC contacted Plaintiff's wife, informed Plaintiff's wife that Plaintiff owed a debt, informed Plaintiff's wife the alleged amount of the debt; informed Plaintiff's wife that the alleged debt was for student loans, implied that Plaintiff's wife was responsible for the alleged debt, and demanded that the Plaintiff's wife set up a payment plan.  Plaintiff's wife instructed PCONALLC to contact Plaintiff about his alleged debts and not to contact her.

27.   On or about June 24, 2016 at 9:34 am, Plaintiff received a phone call from PCONALLC on his cell phone; Defendant did not leave a voice message.

28.   On or about June 24, 2016 at 9:34 am, Plaintiff's wife received another phone call from PCONALLC on her cell phone; Defendant did not leave a voice message.

29.   On or about June 24, 2016 at 11:49 am, Plaintiff received a phone call from PCONALLC on his cell phone; Defendant did not leave a voice message.

30.     On or about June 28, 2016 at 12:00 pm, Plaintiff received a phone call from PCONALLC on his cell phone; Defendant did not leave a voice message.

31.     On or about June 28, 2016 at 8:29 pm, Plaintiff's wife received another phone call from PCONALLC on her cell phone; Defendant disclosed Plaintiff's phone number and Plaintiff's wife again instructed Defendant to call Plaintiff and not her.

32.     On or about June 28, 2016 at 8:29 pm, Plaintiff received a phone call from PCONALLC on his cell phone; Defendant did not leave a voice message.

33.     On or about June 29, 2016 at 9:26 am, "Amy" from PCONALLC called asking for the Plaintiff by name at his place of employment, stating that she was calling from "Premier Credit"; the employee who took the call informed "Amy" that Plaintiff was not there and "Amy" stated that she would call back in an hour.

34.     On or about June 29, 2016 at 11:37 am,  "Amy" from PCONALLC called asking for the Plaintiff by name at his place of employment, and spoke with an assistant at the Plaintiff's place of employment; "Amy" claimed that the reason for the call was "urgent."  This was a lie.   "Amy" also stated that she had left messages for Plaintiff on his mobile phone; this was a lie.  "Amy" was advised in no uncertain terms that Plaintiff was not to receive personal calls at work.

35.     On or about June 30, 2016 at 9:54 am, Plaintiff received a phone call from PCONALLC on his cell phone; Defendant did not leave a voice message.

36.     On or about July 1, 2016 between 8:45 am and 9:15 am, "Angeline" from PCONALLC called Plaintiff's place of employment three times, identified herself as being from "Premier Credit," and asked to "verify employment" and claimed falsely to have spoken with three of

the partners at the Plaintiff's employer and demanded that she be put in contact with one of the partner at the firm to "verify employment."

37.     On or about July 1, 2016 at 11:44 am, "Angeline" from PCONALLC called Plaintiff's place of employment, identified herself as being from "Premier Credit" and insisted that another employee from Plaintiff's place of employment had promised to return her call; this was a lie.

38.     On or about July 2, 2016 at 1:39 pm, Plaintiff received a phone call from PCONALLC on his cell phone; Defendant did not leave a voice message.

39.     On or about July 5, 2016 at 1:47 pm, "Angeline" from PCONALLC called Plaintiff's place of employment, identified herself as being from "North America Credit" and demanded to speak with the CEO of Plaintiff's employer because, "he has access to social security numbers."

40.     On or about July 6, 2016 at 9:02 am, Plaintiff received a phone call from PCONALLC on his cell phone; Defendant did not leave a voice message.

41.     On or about July 6, 2016 at 11:31 am, Plaintiff received a phone call from PCONALLC on his cell phone; Defendant did not leave a voice message.

42.     On or about July 6, 2016 at 4:46 pm, Plaintiff received a phone call from PCONALLC on his cell phone; Defendant left a voice message with a call-back number.

43.     On or about July 7, 2016 at 9:03 am, Plaintiff received a phone call from PCONALLC on his cell phone; Defendant did not leave a voice message.

44.     On or about July 7, 2016 at 11:31 am, Plaintiff received a phone call from PCONALLC on his cell phone; Defendant did not leave a voice message.

45.     On or about July 7, 2016 at 3:15 pm, Plaintiff received a phone call from PCONALLC on his cell phone; Defendant left a voice message with a call-back number.

46.     On or about July 8, 2016 at 9:05 am, Plaintiff received a phone call from PCONALLC on his cell phone; Defendant did not leave a voice message.

47.     On or about July 8, 2016 at 1:15 pm, Plaintiff received a phone call from PCONALLC on his cell phone; Defendant left a voice message with a call-back number.

48.     On or about July 11, 2016 at 1:29 pm, Plaintiff received a phone call from PCONALLC on his cell phone; Defendant did not leave a voice message.

49.     On or about July 11, 2016 at 1:38 pm, Amy from PCONALLC called Plaintiff's place of employment, identified herself as being from PCONALLC and demanded to speak with the firm CEO.  One of the founding partners of the firm took the phone call and told Amy that, absent a court order, no information would be provided, that PCONALLC was previously instructed to cease calling the firm, and renewed the instruction to cease.  "Amy" claimed falsely that neither she nor PCONALLC were ever told to stop calling.

50.     On or about July 11, 2016, a partner at the firm contacted Plaintiff and requested to know what the phone calls from PCONALLC were about; this partner advised the Plaintiff that "Amy" of PCONALLC had offered to provide Plaintiff's social security number to the partners and CEO.

51.     On or about July 12, 2016 at 12:19 pm, Plaintiff received a phone call from PCONALLC on his cell phone; ; Defendant did not leave a voice message.

52.     On or about July 12, 2016 at 6:04 pm, Plaintiff received a phone call from PCONALLC on his cell phone; Defendant did not leave a voice message.

53.    On or about July 12, 2016 at 8:41 pm, Plaintiff received a phone call from PCONALLC on his cell phone; Defendant left a voice message with a call-back number.

54.    On or about July 13, 2016 at 9:13 am, Plaintiff received a phone call from PCONALLC on his cell phone; Defendant did not leave a voice message.

55.    On or about July 13, 2016 at 11:47 am, Plaintiff received a phone call from PCONALLC on his cell phone; Defendant left a voice message with a call-back number.

56.    On or about July 14, 2016 at 9:41 am, Plaintiff received a phone call from PCONALLC on his cell phone; Defendant did not leave a voice message.

57.    On or about July 14, 2016 at 9:42 am, PCONALLC called Plaintiff's wife and asked to confirm the Plaintiff's date of birth; again, Plaintiff's wife instructed PCONALLC to call Plaintiff and not her.

58.    On or about July 14, 2016 at 11:54 am, Plaintiff received a phone call from PCONALLC on his cell phone; Defendant left a voice message with a call-back number.

59.    On or about July 15, 2016 at 8:41 am, Plaintiff received a phone call from PCONALLC on his cell phone; Defendant left a voice message with a call-back number.

60.    On or about July 15, 2016 at 2:19 pm, Plaintiff received a phone call from PCONALLC on his cell phone; Defendant did not leave a voice message.

61.    On or about July 18, 2016 at 12:07 pm, Plaintiff received a phone call from PCONALLC on his cell phone; Defendant did not leave a voice message.

62.    On or about July 19, 2016 at 2:45 pm, Plaintiff received a phone call from PCONALLC on his cell phone; Defendant did not leave a voice message.

63.    On or about July 19, 2016 at 8:57 pm, Plaintiff received a phone call from PCONALLC on

his cell phone; Defendant left a voice message with a call-back number.

64.   On or about July 20, 2016 at 9:06 am, Plaintiff received a phone call from PCONALLC on

      his cell phone; Defendant did not leave a voice message.

65.   On or about July 21, 2016 at 9:10 am, Plaintiff received a phone call from PCONALLC on

      his cell phone; Defendant did not leave a voice message.

66.   All communications set forth herein from the Defendant were in an attempt to collect a debt.

67.   All communications set forth herein from the Defendant to Plaintiff's wife and Plaintiff's

      employer were not for the purpose of obtaining location information, but rather for the sole

      purpose of harassment, abuse, causing frustration, embarrassment, anxiety, terror and other

      emotional distress.

68.   As the result of the facts alleged above, Plaintiff has suffered damages including actual

      damages and emotional distress.

## COUNT  I – Fair Debt Collection Practices Act (PCONALLC)

69.   Mr.  Sterling incorporates the preceding allegations by reference.

70.   At all relevant times PCONALLC – in the ordinary course of its business – regularly engaged

      in the practice of collecting debts on behalf of other individuals or entities.

71.   PCONALLC is a "debt collector" under the Fair Debt Collection Practices Act ("FDCPA"),

      15 U.S.C. §1692a(6).

72.   PCONALLC's foregoing acts in attempting to collect this alleged debt against Mr.  Sterling

      constitute violations of the FDCPA.

73.   PCONALLC used generally false, misleading or unfair methods to collect the debt, in

      violation of the general prohibitions in 15 U.S.C. §1692e.

74.    PCONALLC used unfair or unconscionable means to collect the debt, in violation of the general prohibitions in 15 U.S.C. §1692f.

75.    PCONALLC engaged in abusive conduct in prohibition of 15 U.S.C. §1692d.

76.    PCONALLC communicated with persons other than the Plaintiff for the purposes other than that of acquiring location information about the consumer, in prohibition of 15 U.S.C. §1692b(2).

77.    PCONALLC used unfair or unconscionable means to collect the debt, in violation of the general prohibitions in 15 U.S.C. §1692f.

78.    PCONALLC communicated with a third parties without consent of the Plaintiff given directly to the debt collector in prohibition of 15 U.S.C. § 1692c(b).

79.    PCONALLC engaged in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt in prohibition of 15 U.S.C. § 1692(d).

80.    Plaintiff has suffered damages, including but not limited to frustration, embarrassment, and emotional distress as the result of Defendant's violations of the FDCPA .

## COUNT  II – Michigan Occupational Code (PCONALLC)

81.    Mr.  Sterling incorporates the preceding allegations by reference.

82.    PCONALLC is a "collection agency" as that term is defined in the Michigan Occupational Code, M.C.L. § 339.901(b).

83.    Mr.  Sterling is a debtor as that term is defined in M.C.L. § 339.901(f).

84.    PCONALLC 's foregoing acts in attempting to collect this alleged debt against Mr. Sterling constitute violations of the Occupational Code.

10

85.    Defendant's foregoing acts and omissions in attempting to collect the alleged debts described herein against Plaintiff constitute violations of the Occupational Code, including, but not limited to:

    a.    Making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt or concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt.

    b.    Communicating in a misleading or deceptive manner.

    c.    Misrepresenting the legal rights of the debtor or creditor.

86.    These violations of the Michigan Occupational Code by Defendants were willful.

87.    Plaintiff has been harmed by these violations in an amount to be determined at trial, and PCONALLC's  violations constitute flagrant violations requiring treble damages.

88.    Mr. Sterling has suffered damages as a result of these violations of the Michigan Occupational Code.

### **Demand for Jury Trial**

89.    Plaintiff demands trial by jury in this action.

### **Demand For Judgment for Relief**

*ACCORDINGLY,* Plaintiff seeks Judgment against Defendant for:

    a.    Actual damages – economic and non-economic –  including damage to reputation, embarrassment, and emotional distress in accordance with 15 U.S.C. § 1692k(a)(1);

    b.    Statutory damages in accordance with 15 U.S.C. § 1692k(a)(2)(A);

    c.    Equitable relief under the Michigan Occupational Code regarding cessation of illegal debt collection;

d.      Statutory costs and attorney fees in accordance with 15 U.S.C. § 1692k(a)(3);

e.      Treble damages; and

f.      Such further relief as the Court deems just and proper.


                                Respectfully Submitted,

                                ADAM G. TAUB & ASSOCIATES
                                CONSUMER LAW GROUP, PLC

                                By:     /s/ Adam G. Taub
                                        Adam G. Taub (P48703)
                                        Attorney for Sunjay Sterling
                                        17200 West 10 Mile Rd. Suite 200
                                        Southfield, MI 48075
                                        Phone:  (248) 746-3790
                                        Email:   adamgtaub@clgplc.net


Dated: August 19, 2016